IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

      Plaintiff,

v.                                  CASE NO. 5:14cv10-RH/CJK

AMERISURE INSURANCE COMPANY
et al.,

      Defendants.

_____/


## ORDER GRANTING SUMMARY JUDGMENT ON LIABILITY

This is an insurance coverage dispute. The principal issue is whether a general contractor was an additional insured under a subcontractor's liability policy. The policy made the general contractor an additional insured if the subcontract required the subcontractor to obtain coverage for the general. The subcontract included such a provision. So the general was an additional insured.

The insurer wrongly refused to defend the general in a state-court lawsuit. The general's own insurer provided a defense and now seeks to recover the

attorney's fees and costs it incurred in doing so. In addition to the issue of whether the general contractor was an additional insured, the case presents three other issues: whether the state-court complaint alleged an occurrence *during the policy period*; whether the subcontractor's insurer must pay the fees and costs incurred not only in defending the state-court claim itself but also in pursuing third-party claims seeking to recover from others any amounts awarded against the general contractor; and whether the claimed fees and costs were reasonable.

The case is here on cross-motions for summary judgment. This order resolves against the subcontractor's insurer all the issues but the reasonableness of the fees and costs. That issue presents a genuine factual dispute.

I

In 2003, the developers of the proposed Calypso condominium tower in Panama City Beach, Florida, hired W. G. Yates & Sons Construction Company as the general contractor. Yates hired Jemco Plastering, Inc. as the stucco subcontractor. Yates obtained liability insurance from Travelers Property Casualty Company of America. Jemco obtained liability insurance from Amerisure Insurance Company.

Jemco was on the job from July 2004 to February 2006. A certificate of occupancy issued in March 2006. The developer accepted the project in July 2007. In due course the project was turned over to a condominium association.

By some time in 2009, the condominium association was aware of construction defects. In March 2010, the association obtained an engineering report. In July 2010, the association sued Yates in a Florida state court, alleging, among other things, defects in the stucco work performed by Jemco. Yates tendered defense of the action to Amerisure. Amerisure denied coverage. Yates then tendered the defense to Travelers. Travelers undertook Yates's defense, reserving its subrogation rights against Amerisure.

Represented by attorneys provided by Travelers, Yates not only defended the association's claims but also asserted a third-party complaint against Jemco and other subcontractors, seeking to recover from them any amounts for which Yates might be held liable. The case ultimately settled in full.

Travelers now sues Amerisure, seeking to recover the attorney's fees and costs Travelers incurred in defending the state-court litigation, including the fees and costs incurred in pursuing the third-party claims. Travelers does not claim indemnity for the amount paid to settle the state-court litigation.

Travelers and Amerisure have filed cross-motions for summary judgment.

II

The subcontract required Jemco to provide insurance covering Yates:

> Subcontractor shall obtain, before commencement of work, and shall maintain until final acceptance of the Prime Contract work, full insurance coverage, *including as a minimum the same types of insurance at the same policy limits which are specified by the Prime Contract* or which the Contractor requires for this Project, whichever are greater. The Subcontractor is hereby made responsible for determining and obtaining the types and extent of such additional insurance as may be necessary to give adequate and complete protection to the Subcontractor, the Contractor, and the Owner from claims for property damage and from claims for bodily injury, including death, which may arise from or be connected with this Subcontract, whether such claims relate to acts or omissions of Subcontractor, of any of its subcontractors or suppliers, or anyone directly or indirectly employed by any of them. *The Subcontractor shall name the Contractor as a named additional insured* (but not subject to premium terms or liability) on all insurance policies and coverages, and the Subcontractor's insurance shall be primary as to any other valid insurance available to the Contractor . . . .

(Emphasis added.)

The requirement to provide the "same types of insurance at the same policy limits which are specified by the Prime Contract" incorporated the general contract's requirement to provide "Commercial General Liability" insurance including "coverage for . . . Products-Completed Operations."

Jemco complied with the subcontract's requirement to provide coverage for Yates by obtaining liability insurance from Amerisure Insurance Company. The

policy named Jemco as the insured. An endorsement provided for additional insureds:

> [The policy] is amended to include as an insured any person or organization, called an additional insured in this endorsement:
>
> 1. *Whom you are required to add as an additional insured on this policy under a written contract* or agreement relating to your business; or
>
> 2. Who is named as an additional insured under this policy on a certificate of insurance.
>
> . . . .
>
> The insurance provided to the additional insured is limited as follows:
>
> 1. That person or organization is only an additional insured with respect to liability arising out of:
>
> (a) Premises you own, rent, lease, or occupy, or
>
> (b) *Your ongoing operations performed for that additional insured, unless the written contract or agreement or the certificate of insurance requires "your work" coverage (or wording to the same effect) in which case the coverage provided shall extend to "your work" for that addition insured.*
>
> . . . .

(Emphasis added.)

Under these provisions, Yates was an additional insured under the Amerisure policy with respect to the claims asserted in the state-court litigation. The steps in the analysis are as follows.

First, the subcontract required Jemco to make Yates an additional insured, so Yates was an entity Jemco was "required to add as an additional insured . . . under a written contract or agreement relating to your business." This made Yates an additional insured under the explicit terms of the Amerisure policy, at least to some extent.

Second, the coverage of Yates as an additional insured applied to Jemco's "ongoing operations performed for [Yates]." The policy defined "ongoing operations" to exclude claims for damage "occurring after . . . [a]ll work has been completed." So the "ongoing operations" coverage extended only to claims for damage that occurred while Jemco was on the job. The "ongoing operations" coverage did not, without more, provide coverage for completed operations—that is, for damage occurring *after* Jemco left the job.

Third, the coverage of Yates as an additional insured also applied to "your work"—that is, to claims asserting damage occurring as a result of Jemco's work, even after Jemco left the job—if the subcontract required Jemco to provide such coverage for Yates. The subcontract plainly required Jemco to provide such

Case No. 5:14cv10-RH/CJK

coverage. This is so because the subcontract required Jemco to provide the "same types of insurance [as] specified by the Prime Contract." The prime contract required coverage for "Completed Operations." "Your work" and "completed operations" are, at least for present purposes, two terms for the same thing. *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 878 (Fla. 2007). The claims in the underlying lawsuit against Yates were claims arising from "your [that is, Jemco's] work" or "completed operations." Indeed, claims of this kind are precisely the kind of claims contemplated by your-work or completed-operations coverage.

In sum, Yates was an additional insured for the state-court claims.

III

The next issue is whether the state-court complaint alleged an occurrence *within the policy period*. The parties disagree on which state's law governs this issue.

Jemco is a Florida corporation with its principal place of business in Florida. It obtained the Amerisure policy through a Florida insurance agent. The policy does not include a choice-of-law provision, but Amerisure issued the policy through a Florida agent to a Florida corporation on a Florida condominium project,

undoubtedly delivering the policy in Florida. It is clear that Florida law applies. *See State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006).

Under Florida law, a liability insurer's duty to defend extends to an entire lawsuit if any claim in the lawsuit may come within the policy's coverage. *See, e.g., Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005), aff'd, 189 Fed. Appx. 941 (11th Cir. 2006) (unpublished). Here the policy's coverage extended to any "occurrence" within the policy period. The complaint in the state-court lawsuit plainly alleged an occurrence; it alleged "damage to the work of other sub-contractors and tradesmen" caused by "defective application of exterior cladding (stucco)." So the only remaining duty-to-defend issue is whether the state-court complaint alleged an occurrence *within the policy period*.

Two Eleventh Circuit decisions are on point and, at least until a state court rules to the contrary, binding on district courts within the circuit. And even aside from their binding force, the decisions reach the correct result.

First, in *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810 (11th Cir. 1985), the issue was an insurer's duty to defend a general contractor in an underlying lawsuit alleging damage from construction defects. The complaint in the underlying lawsuit did not allege when the damage actually occurred; the complaint alleged only that the damage could not be discovered until several years

Case No. 5:14cv10-RH/CJK

after the policy period ended.  Applying Florida law, the Eleventh Circuit held that the insurer had a duty to defend, because the critical date for determining coverage was when the damage actually occurred, not when it was or could have been discovered, and the complaint alleged damage that, at least insofar as shown on the face of the complaint, might have occurred within the policy period.  On the issue of whether the underlying complaint alleged an occurrence within the policy period sufficient to trigger the duty to defend, Trizec is indistinguishable from the case at bar.

     Similarly, in *Carithers v. Mid-Continent Casualty Co.*, 782 F.3d 1240 (11th Cir. 2015), the issue was an insurer's duty to defend and indemnify a contractor in an underlying lawsuit alleging damages from defective work.  The damage was not discovered until two years after the policy period ended.  The parties disagreed on whether the "trigger" date—the date of the "occurrence"—was the date when the damage actually occurred or the date when the damage was "manifested," that is, when the damage was or perhaps could have been discovered.  The Eleventh Circuit said the absence of controlling Florida law on this issue was enough to require the insurer to defend the action, because, the court said, all doubts about the duty to defend must be resolved against the insurer.  In addressing the duty to indemnify, the court went further, citing *Trizec* and holding that the trigger date

Case No. 5:14cv10-RH/CJK

was when the damage actually occurred, not when the damage was manifested. On the issue of whether the underlying complaint was sufficient to trigger the duty to defend, *Carithers* is again indistinguishable from the case at bar.

The bottom line is this. The underlying complaint alleged damage caused by defective stucco work. For all that was alleged in the complaint, the damage may have occurred during the policy period, either after completion of the work (bringing the case within the your-work or completed-operations coverage) or perhaps even while the work was ongoing (bringing the case within the ongoing-operations coverage). Amerisure had a duty to defend the claims.

The result should not be surprising. The whole point of the contractual provision requiring Jemco to obtain coverage was to protect against defective-stucco claims just like this. The reason Jemco bought the coverage was to protect against claims just like this. Amerisure took a premium for accepting the risk of actions just like this. It had a duty to cover the risk. The plain terms of Amerisure's policy so provide.

IV

When Amerisure failed to step up, Travelers did what Amerisure should have done: Travelers provided Yates a defense. The attorneys Travelers hired chose to defend the case not only by answering the claims but also by asserting

Case No. 5:14cv10-RH/CJK

third-party claims against subcontractors, including Jemco. Travelers paid the fees and costs incurred in connection with the third-party claims, apparently concluding that this was the best strategy for defending the claims and that its duty to defend Yates thus obligated it to pay for the third-party claims as well. There is support for that view. *See, e.g., Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 458, 461 (W.D. Mich. 1993), *aff'd*, 64 F.3d 1010 (6th Cir. 1995).

Had Amerisure provided a defense as it should have done, the attorneys it hired might or might not have made the same strategic decision as the attorneys hired by Travelers. But now Amerisure can complain, at most, about unreasonable decisions, not about decisions that reasonably could have gone either way. As a leading commentator has put it, when an insurer breaches its duty to defend,

> the insured is justified in assuming the defense of the action and is released from the contractual obligation to leave the management of the case to the insurer. Not only does the insurer lose the power to control the defense or dictate to the insured how the case should be handled, but the insurer cannot complain about the conduct of the defense by the insured or the negligent handling of the case by the insured's attorney.

22-136 Gordon L. Ohlsson, *Appleman on Insurance Law & Practice Archive* § 136.8 (Lexis database updated 2013).

The record establishes beyond genuine dispute that Yates pursued its third-party claims as a reasonable part of its strategy for defending the claims against it.

Case No. 5:14cv10-RH/CJK

Amerisure is liable for the fees and costs Travelers reasonably incurred not only in defense of the main claims against Yates but also in pursuing the third-party claims.

V

The only remaining issue is whether Travelers reasonably incurred the full amount of fees and costs it now claims. The record presents a genuine factual dispute on this issue. On the one hand, Travelers, a sophisticated consumer of legal services, retained attorneys and approved their bills in an arm's length transaction. The amount a willing buyer pays a willing seller is powerful evidence of market value. But on the other hand, Amerisure has submitted a qualified expert's testimony that the fees were unreasonable. The issue cannot be resolved by summary judgment.

VI

For these reasons,

IT IS ORDERED:

1. Travelers' summary-judgment motion, ECF No. 74, is GRANTED IN PART. Summary judgment on liability is entered in Travelers' favor. I do *not*

2. direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

3. Amerisure's summary-judgment motion, ECF No. 71, is DENIED.

4.  By separate notice, the clerk must set a scheduling conference by telephone.

SO ORDERED on September 30, 2015.

            s/Robert L. Hinkle
            United States District Judge